```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/18/21
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STARBUCKS CORPORATION,

                                    Plaintiff,

     - against -

NEW WTC RETAIL OWNER LLC,

                                    Defendant.

---

**21 Civ. 400 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

　　Plaintiff Starbucks Corporation ("Starbucks") brings this action against defendant New WTC Retail Owner LLC ("Westfield"), alleging a breach of contract (Counts One and Two), and a breach of the implied covenant of good faith and fair dealing (Count Three). (<u>See</u> "Complaint," Dkt. No. 1.) Now before the Court are two motions. The first is Westfield's premotion letter, dated March 9, 2021, which the Court construes as a motion to dismiss under the Federal Rule of Civil Procedure 12(c).[1] (<u>See</u> "Motion," Dkt. No. 16.) The Court also received Starbucks's opposition letter, dated March 16, 2021. (<u>See</u> "Opp'n," Dkt. No. 18). The second motion before the Court is Starbucks's letter, dated August 30, 2021, seeking to hold Westfield in default, which the Court construes as a motion for a default judgment under Federal

---

[1]　<u>See</u> <u>Kapitalforeningen Lægernes Invest. v. United Techs. Corp.</u>, 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

Rule of Civil Procedure 55(b)(2). (See "Default Mot.," Dkt. No. 30.) Prior to Starbucks's motion for a default judgment, Westfield filed a letter opposing a finding of default. (See "Default Opp'n," Dkt. No. 29.) For the reasons stated herein, Starbucks's motion for entry of default and a default judgment is denied; and Westfield's motion to dismiss the complaint is denied in part and granted in part.

## I.   BACKGROUND

A.  FACTS[2]

On May 6, 2014, Starbucks and Westfield entered into a lease (the "Lease") for 1,757 square feet of retail space (the "Premises") within the Westfield World Trade Center Shopping Center (the "Shopping Center"). Starbucks intended to develop the Premises for a café to sell premium coffees and other items. Westfield is the landlord for the Shopping Center, although the Port Authority of New York and New Jersey (the "Port Authority") is the actual owner and ground lessor of the property upon which the Shopping Center is located.

When the parties executed the Lease, a performing arts center (the "Performing Arts Center") was being constructed above the Premises and was expected to be completed in or

---

[2]   Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Plaintiff, as required under the standard set forth in Section II, *infra*.

around May 2015. Due to this construction, Starbucks could not take possession of the Premises and begin development of its café until the Performing Arts Center was completed. Meanwhile, Starbucks's obligation to pay rent commences only when it takes possession of the Premises, which also coincides with the start of a ten-year rental term for the Premises. (See "Lease," § 1.02, Motion, Ex. A.)[3] In essence, although the Lease commenced on May 6, 2014, Westfield was to deliver possession of the Premises on a later date, at which point the Lease's ten-year term began.

The Lease originally set forth an anticipated completion date for the Performing Arts Center. Section 1.02(a) of the Lease stated the following: "The estimated date upon which [Westfield] will deliver possession of the Premises to [Starbucks] in Tenant Ready Condition is June 1, 2015 (the 'Estimated Delivery Date'); the actual date upon which such delivery occurs is referred to in this Lease as the 'Delivery Date.'" (Lease § 1.02(a).) Further, pursuant to Section 1.02(a), Westfield "shall endeavor to give [Starbucks] at least sixty (60) days prior notice of the date Landlord

---

[3]   Although Starbucks did not file a copy of the Lease with the Complaint, the Court finds that the Lease is incorporated by reference. See Rotberg v. Jos. A. Bank Clothiers, Inc., 345 F. Supp. 3d 466, 474–75 (S.D.N.Y. 2018) ("[D]istrict courts consider 'documents that are attached to the complaint or incorporated in it by reference because such documents are deemed part of the pleading.'" (quoting Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)).

reasonably anticipates the Delivery Date will occur." (Id.)
On February 11, 2015, Starbucks and Westfield amended the
Lease (the "Lease Amendment") to replace the Estimated
Delivery Date provision with the following: "The actual date
upon which Landlord shall deliver possession of the Premises
to Tenant in the Tenant Ready Condition is referred to in
this Lease as the 'Delivery Date.'" ("Lease Am.," ¶ A, Motion,
Ex. A.) Starbucks alleges that the parties entered into the
Lease Amendment because of delays in finishing the Performing
Arts Center.

The Performing Arts Center remained unfinished at the
time the Complaint was filed, and its completion has been
repeatedly delayed. Starbucks alleges that Westfield has
failed to complete the Landlord's Work, which the Lease
defines as the "Landlord's total responsibilities (or any
portion thereof) for the construction and improvement of . .
. the Premises." (Lease, Ex. B § I(A).) In turn, Westfield
still has not delivered possession of the Premises. Since the
Lease was executed, nearly seven years ago, Westfield has
provided Starbucks with vague timeframes for completing the
Performing Arts Center. On January 6, 2021, Westfield sent
Starbucks a letter in which it stated that it "projected"
that the Port Authority would "turnover" the Premises on April

1, 2021, and that Westfield "estimated" a Delivery Date of July 1, 2021.

Before taking possession of the property, Starbucks was also required to obtain approval from the Port Authority. Pursuant to Section 1.02(c), Starbucks shall "use its best efforts to obtain a Conditional Approval to Construct from the [Port Authority's Quality Assurance Department ('QAD')] to allow for the commencement of Tenant's Initial Alterations (collectively, the 'Conditional Approval')." (Lease § 1.02(c).) Section 1.02(c) further provided that, by January 30, 2015, Starbucks must apply to the QAD, but "through" Westfield, for Conditional Approval. (See id.) The Lease Amendment replaced the January 30 deadline with the requirement that Starbucks submit its application within "fourteen (14) days after [Westfield] approves [Starbucks's] plans in writing." (Lease Am. ¶ B.) If Starbucks has not obtained Conditional Approval within 180 days after the QAD received Starbucks's application, then Starbucks has the option to terminate the lease on 30 days' notice. Starbucks alleges that Westfield has delayed or withheld its preliminary approval of Starbucks's plans, which constitute a breach of the implied covenant of good faith and fair dealing. (See Lease § 1.02(c).)

B.  <u>PROCEDURAL HISTORY</u>

Starbucks initiated this action on January 15, 2021, nearly seven years after the commencement of the Lease. Starbucks brings two claims for breach of contract and one claim for breach of the implied covenant of good faith and fair dealing. Consistent with the Court's Individual Practices, on March 9, 2021, Westfield wrote to Starbucks regarding an anticipated motion to dismiss the Complaint under Rule 12(c). (<u>See</u> Motion.) Starbucks responded to the Motion by letter, dated March 16, 2021. (<u>See</u> Opp'n.) Westfield advised the Court by, letter dated April 9, 2021, that the parties' letter exchange failed to resolve their dispute. (<u>See</u> Dkt. No. 19.) On May 3, 2021, the Court advised the parties that it would review the parties' premotion letters and determine whether additional briefing or a conference would be required. (<u>See</u> Dkt. No. 23.) As noted above, the Court now construes Westfield's March 9 letter as a motion to dismiss the complaint under the Federal Rule of Civil Procedure 12(c). The Court will resolve the Motion on the basis of the letters and material in the record.

On August 26, 2021, Westfield preemptively filed a letter with the Court to state that it believed, based on its then-recent exchanges, that Starbucks was going to move for a default judgment against Westfield because Westfield had

failed to file an answer or otherwise respond to the Complaint. (See Default Opp'n at 1.) Several days later, Starbucks filed such a letter and moved the Court to find Westfield in default or, alternatively, to require Westfield to immediately file an answer. (See Default Mot. at 1.) The Court construes Starbucks's August 26 letter as a motion for a default judgment under Federal Rules of Civil Procedure 55(b)(2).

## II.   LEGAL STANDARD

### A.   RULE 55

There is a two-step process for obtaining a default judgment under Rule 55. The first step is to obtain an entry of default from the Clerk of the Court, pursuant to Rule 55(a), when the defendant has failed to plead or otherwise defend an action. See New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). In cases where the plaintiff's claim is not for a "sum certain" — like here where Starbucks seeks recission of the Lease — the second step is to apply to the court, pursuant to Rule 55(b)(2), for a default judgment. See id. This District's Local Rules further apply this two-step process by requiring a party seeking a default judgment to append the Clerk of the Court's Certificate of Default to the party's motion. See S.D.N.Y. Local Civil Rule 55.2(b).

Ultimately, "[t]he dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The Second Circuit has also repeatedly expressed its "strong preference for resolving disputes on the merits." Green, 420 F.3d at 104 (2d Cir. 2005) (quotations omitted). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Enron, 10 F.3d at 96.

B.  RULE 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion should be granted 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" Thyssenkrupp Materials NA, Inc. v. M/V Kacey, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017) (quoting Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995)). When deciding a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to

them, and any matter of which the court can take judicial notice." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

The standard for a court's evaluation of a Rule 12(c) motion is the same that applies to a motion to dismiss under Rule 12(b)(6). See id. at 429. This means that to survive a Rule 12(c) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met when a complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, if the factual allegations sufficiently "raise a right to relief above the speculative level," then a court should not dismiss a complaint for failure to state a claim. Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is to "assess the legal feasibility of the complaint, not . . . the weight of the evidence which might be offered in support thereof." In re Columbia Pipeline, Inc., 405 F. Supp. 3d 494,

505 (S.D.N.Y. 2019) (quoting <u>Eternity Global Master Fund ltd.</u> <u>v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 176 (2d Cir. 2004)). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. <u>See id.</u> However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. <u>See Iqbal</u>, 556 U.S. at 678.

### III.   DISCUSSION

A. <u>MOTION FOR A DEFAULT JUDGMENT</u>

Starbucks originally sought an entry of default against Westfield on February 24, 2021, for not filing an answer or otherwise responding to the Complaint. (<u>See</u> Dkt. Nos. 9–10.) In its Default Motion, Starbucks noted that the same day it filed its application for an entry of default, Westfield's counsel contacted Starbucks's counsel to explain that the Secretary of State had not yet served the Complaint on Westfield. (<u>See</u> Default Mot. at 1.) Regardless, the Clerk of the Court rejected Starbucks's request for a Certificate of Default. (<u>See</u> Dkt. No. 9.) Starbucks filed the pending Default Motion on August 30, 2021, seeking to hold Westfield in default on the basis that Westfield had defaulted by filing the Motion after the time to answer or otherwise respond to the Complaint expired on February 10, 2021. (<u>See</u> Default Mot. at 1.)

Starbucks's failure to obtain a Certificate of Default, in compliance with Rule 55 and Local Rules 55.1 and 55.2, is fatal to its Default Motion. Obtaining such a certificate is antecedent to moving for a default judgment. See Kingsley v. N.Y.C. Police Dep't, No. 07 Civ. 7629, 2008 WL 5215648, at *1 (S.D.N.Y. Dec. 9, 2008) (denying motion for default judgment "because [plaintiff] failed to obtain a certificate of default from the clerk"). While courts have occasionally eschewed "[r]igid adherence to these rules" for achieving "efficient administration of justice," RLI Ins. Co. v. May Const. Co., No. 09 Civ. 7415, 2011 WL 1197937, at *3 (S.D.N.Y. Mar. 22, 2011) (quotations omitted), the Court finds that deviation from applicable procedures is unwarranted here.

Westfield has participated in this action since the outset. Westfield moved to dismiss the Complaint soon after it was served, and it has repeatedly appeared to deny Starbucks's claims. (See Motion at 1; Default Opp'n at 1.) Moreover, according to Starbucks's assertion, Westfield's counsel immediately contacted Starbucks's counsel after Starbucks filed its application for an entry of default. (See Default Mot. at 1.) Moreover, as discussed below, Westfield raises meritorious defenses to Starbucks's claims.

The Court is mindful of Starbucks's concerns that Westfield's failure to file an answer has delayed discovery.

But Starbucks also concedes that it may need to request a reasonable extension of the discovery schedule. (Default Mot. at 2.) Such an extension may ameliorate these concerns. Ultimately, the Court finds that default is unwarranted here, given that Starbucks has failed to follow the procedural requirement of obtaining an entry of default, and that a resolution on the merits is more appropriate. See Green, 420 F.3d at 104.

B.   MOTION TO DISMISS

    1.   Breach of Contract

Starbucks brings two breach of contract claims for breach of Section 1.02(a) of the Lease. First, Starbucks alleges that Westfield failed to (a) provide a Delivery Date and (b) failed to deliver possession of the Premises within a reasonable time, in violation of New York Real Property Law § 233-a. (See Complaint ¶¶ 29-30.) As grounds for its second claim, Starbucks asserts that Westfield's breach was so substantial and fundamental as to defeat the object of the Lease. (See Complaint ¶¶ 38.)

    a.  Delivery of Possession of the Premises and Providing a Delivery Date

Westfield argues that Starbucks's breach of contract claims should be dismissed because two Lease provisions waived Westfield's liability for delays in delivering

possession of the Premises. Westfield relies principally on a clause in Section 5.03 (the "Delay Exculpatory Clause") which states:

> In no event shall [Westfield] be held liable for damages or otherwise as a result of any failure to make the Premises available within the time and/or in the condition provided in this Lease and no such failure shall permit [Starbucks] to rescind or terminate this Lease. The provisions of this Section 5.03 are intended to constitute 'an express provision to the contrary' within the meaning of Section 223-a of the New York Real Property Law.

(Lease § 5.03; Motion at 2-3.) Section 223-a of the New York Real Property Law provides that "[i]n the absence of an express provision to the contrary, there shall be implied in every lease of real property a condition that the lessor will deliver possession at the beginning of the term." N.Y. Real. Prop. Law § 223-a.

Westfield also relies on a provision of Section 6.04(C) (the "Construction Exculpatory Clause"), which states:

> No performance by [Westfield] of any [construction] nor any construction work performed by parties other than [Westfield] which own and/or lease other portions of the World Trade Center . . . [shall] entitle [Starbucks] to any abatement or diminution of rent, or relieve [Starbucks] from any of its obligations under this Lease, or impose any liability upon [Westfield] . . . .

(Lease § 6.04(c).) Westfield asserts that the Delay and Exculpatory Clauses disclaim any liability for its failure to

turn over possession of the Premises for reasons outside Westfield's control. (See Motion at 2-3.)

i.  Delivering Possession of the Premises

The Court finds that the Delay and Construction Exculpatory Clauses do not bar Starbucks's breach of contract claims for Westfield's failure to deliver possession of the Premises in a reasonable time. Clauses like the Delay Exculpatory Clause that disclaim liability for delays, expressly contrary to Section 223-a, are enforceable under New York law. See BG Records v. Ancona, 71 A.D.3d 561, 561 (1st Dep't Mar. 23, 2010). Such exculpatory clauses, however, are unenforceable where a plaintiff demonstrates that the defendant "intentionally caused the delay," in which case "the otherwise generally enforceable exculpatory clause in the lease would not avail [the landlord]." New WTC Retail Owner LLC v. Pachanga, Inc., 160 A.D.3d 584, 585 (1st Dep't 2018); Mr. Ham, Inc. v. Perlbinder Holdings, LLC, 116 A.D.3d 577, 578 (1st Dep't 2014) (finding that Section 223-a was not barred by exculpatory clause because the clause "does not govern [an owner's] intentional acts").

Although the allegations are thin, Starbucks claims that Westfield's delays have been intentional and unreasonable. Starbucks asserts that it "expected that the process of designing, constructing, and then opening [the Premises]

14

would occur within a reasonable period." (Complaint ¶ 7). Further, Starbucks states that Westfield "has not completed the Landlord's Work necessary to render the Premises in Tenant Ready Condition (as defined in the Lease)," (<u>Id.</u> ¶ 13), and that Westfield has instead continued "to provide vague timeframes that seem[ed] more designed to keep Starbucks at bay than to give concrete information about next steps at the Premises," (<u>Id.</u> ¶ 25). Viewing the Complaint in the light most favorable to Starbucks, the Court finds that these allegations support the inference that Westfield's failure to complete the Landlord's Work – defined as the "total responsibilities . . . for the construction and improvement" of the Premises – constitutes an intentional and unreasonable delay in breach of Section 1.02(a). In essence, Starbucks has sufficiently alleged that the Delay Exculpatory Clause here did not vitiate Westfield's duty, under Section 223-a, to deliver possession of the premises within a reasonable time.

The Court finds that the Construction Exculpatory Clause also does not bar Starbucks's claim for failure to deliver possession of the Premises. This Clause is best read as applicable to circumstances after Westfield has delivered *actual* possession of the Premises. Section 6.04(C) covers circumstances where construction work by anyone could disrupt or impede possession of the Premises, such as where "any

resulting noise, vibration, dust or debris" could result in "actual or constructive eviction." (Lease § 6.04(C).) Moreover, pursuant to this provision, Westfield "agrees" that any construction work "insofar as it requires entry into the Premises shall be made in a manner designed to minimize interference with [Starbucks's] normal business operations . . . ." (Id.) These provisions, however, have no import when Westfield has not delivered *actual* possession of the Premises. Therefore, Section 6.04(C) is best understood to disclaim any liability for disruptions in possession of the Premises after it has been delivered to Starbucks.

  ii. Providing a Delivery Date

   In addition to the grounds discussed above, there is another reason why the Delay and Construction Exculpatory Clauses do not apply to Westfield's obligation to provide a Delivery Date. In Victoria's Secret Stores, LLC v. New WTC Retail Owner LLC, an analogous suit brought by another Shopping Center tenant, New York courts rejected Westfield's arguments about the ambit of the two Exculpatory Clauses. The motion court in Victoria's Secret found that the Delay Exculpatory Clause applied only to "actual delivery" of the premises but not to setting an estimated delivery date. No. 656078/2019, 2020 WL 4743367, at *2 (N.Y. Sup. Ct. Aug. 12, 2020), aff'd 194 A.D.3d 438 (1st Dep't 2021). In affirming

the motion court, the Appellate Division concluded that providing the tenant with an estimated delivery date was "an independent obligation under the terms of the lease," and that the Delay Exculpatory Clause did not apply because it "makes no mention of defendant's obligation" to provide such a date. 194 A.D.3d at 439.

The Court finds Victoria's Secret on point and persuasive. "Where a contract does not specify a date or time for performance, New York law implies a reasonable time period." See Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007). Pursuant to Section 1.02(a) of Lease, as revised by the Lease Amendment, Westfield was obligated to provide Starbucks with a Delivery Date, i.e., the date upon which actual delivery of the premises would occur. This obligation is separate from Westfield's obligation to *actually* deliver possession of the Premises. See Victoria's Secret, 194 A.D.3d at 439. Neither the Lease nor the Lease Amendment set a time by which the Delivery Date must be provided. As a result, New York law implies that Westfield was to provide Starbucks with a Delivery Date in a reasonable time, which is separate from Westfield's obligation to provide actual delivery of the Premises. See id. The Lease itself manifests the expectation and value of such prior notice by requiring Westfield to

"endeavor to give [Starbucks] at least sixty (60) days prior notice" of the Delivery Date. (Lease § 1.02(a).)

The Delay and Construction Exculpatory Clauses do not apply to Westfield's failure to provide a Delivery Date. The Delay Exculpatory Clause applies where Westfield failed to "make the Premises available within the time" provided in the Lease. (See Lease § 5.03.) This provision applies to Westfield's actual delivery of the Premises, but it does not mention Westfield's obligation to provide the date upon which actual delivery was to occur (i.e., the Delivery Date). The Clause is, therefore, best understood as disclaiming liability for failing to *actually* deliver the Premises, but not for failing to provide a Delivery Date on which *actual* delivery is to occur. See Victoria's Secret, 194 A.D.3d at 439. Similarly, as addressed above, the Construction Exculpatory Clause is best read to apply to Westfield's actual delivery of the Premises or to disruptions to the Premises once actual delivery has occurred. Fundamentally, this clause also does not mention disclaiming liability for Westfield's failure to provide a Delivery Date. (See Lease § 6.04(C).)

Viewing the Complaint in the light most favorable to Starbucks, the Court finds that the allegations support the reasonable inference that Westfield failed to satisfy its obligation to provide Starbucks with a Delivery Date within

a reasonable time. (See Complaint ¶¶ 24–26.) Starbucks
alleges that it has, for nearly seven years, "repeatedly
attempted to obtain a Delivery Date, but [Westfield] failed
to provide one and instead has provided vague timeframes that
have come and gone." (Complaint ¶ 24.) And it was not until
January 6, 2021, that Westfield finally provided at least an
"estimated" Delivery Date of July 1, 2021. The Court therefore
denies Westfield's motion to dismiss Starbucks's claim based
on a failure to provide a Delivery Date.

   2.  Breach of Good Faith and Fair Dealing

   Starbucks also brings a claim for breach of the implied
covenant of good faith and fair dealing. The Complaint alleges
that Westfield breached this covenant by (a) failing to
provide a Delivery Date or actual possession of the Premises,
and (b) failing to help prepare and submit Starbucks's QAD
application for Conditional Approval. (Complaint ¶¶ 46–47.)

   "In New York, all contracts imply a covenant of good
faith and fair dealing in the course of performance." 511 W.
232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153
(2002). The covenant encompasses "any promises which a
reasonable person in the position of the promisee would be
justified in understanding were included." Id. The covenant
requires that "neither party shall do anything which will
have the effect of destroying or injuring the right of the

other party to receive the fruits of the contract." Id.(quoting Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995)).

Breach of the covenant does not provide a distinct cause of action but is merely "one way of establishing a breach of contract." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007). Accordingly, a claim for the breach of the implied covenant "cannot be maintained [where] it is premised on the same conduct that underlies the breach of contract cause of action and is 'intrinsically tied to the damages alleged resulting from a breach of contract.'" MBIA Ins. Corp. v. Merrill Lynch, 81 A.D.3d 419, 420 (1st Dep't 2011) (quoting Hawthorne Grp. V. RRE Ventures, 7 A.D.3d 320, 323 (1st Dep't 2004)); Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) ("Claims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." (quotations omitted)). Otherwise, a claim for breach of the implied covenant should be dismissed as duplicative or redundant because "the conduct allegedly violating the implied covenant is also the predicate for breach of [a] covenant of an express provision of the underlying contract." Id. (quoting ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997)); Bostany

v. Trump Org. LLC, 73 A.D.3d 479, 481 (1st Dep't 2010) (claim for breach of the implied covenant was dismissed on "ground of redundancy").

The Court finds that Starbucks's claim for the breach of the implied covenant based on Westfield's failure to provide a Delivery Date or to deliver possession of the Premises is duplicative of its breach of contract claims. A claim for breach of the implied covenant based on the failures detailed above is premised on the same facts as Starbucks's claim that Westfield breached Section 1.02(a) of Lease. (See Complaint ¶¶ 27-41, 46.) Accordingly, Starbucks's claim for breach of the implied covenant, based on the failure to provide a Delivery Date or deliver possession of the premises in a reasonable time, is dismissed. See MBIA Ins., 81 A.D.3d at 420; Fleisher, 858 F. Supp. 2d at 300.

Now remaining is Starbucks's claim that Westfield breached the implied covenant by withholding or delaying its approval of Starbucks's plans for development of the Premises. Pursuant to Section 1.02(c) of the Lease, as modified by the Lease Amendment, within 14 days of Westfield's approval of Starbucks's plans for the Premises, Starbucks must apply to the Port Authority, through Westfield, for Conditional Approval to perform construction on the Premises. (See Lease § 1.02(c); Lease Am. ¶ B.)

The Complaint contains two principal allegations as to how Westfield delayed the Conditional Approval process. First, Westfield "controlled the application process and *could* stall progress" by withholding Starbucks's application or by "withholding from Starbucks information that it needed to complete or submit its Application to [Westfield] as part of the application process." (Complaint ¶ 16 (emphasis added).) Second, "[b]ecause of [Westfield's] delay and/or withholding of its written approval of Starbucks' plans, Starbucks has been unable to submit its Application to the Port Authority and unable to exercise its rights in Section 1.02(c)." (Complaint ¶ 19.)

Viewing these allegations in the light most favorable to Starbucks, the Court finds that the Complaint does not adequately allege a breach of the implied covenant. While Starbucks does allege that Westfield "could stall progress" on the Conditional Approval process, the Complaint is missing allegations as to *how* Westfield did stall this progress. The Complaint does not allege any facts regarding whether or when Starbucks ever submitted its plans to Westfield for approval, such that Westfield could withhold its approval.[4] Also absent

---

[4]   In its Opposition, Starbucks claims that Westfield possessed Starbucks's approval plans for "close to three years but chose not to initiate the Approval process." (Opp'n at 3.) The Court is unable to consider this assertion, however, because the Court is "required to

from the Complaint is any allegation that Starbucks was missing information to complete its application, and as a result there is no allegation that Westfield withheld such necessary information. These missing allegations are crucial to establish that Westfield acted to stall the Conditional Approval process.[5] Without more, the Complaint contains insufficient facts to find this claim plausible.

Accordingly, Starbucks's claim for breach of the implied covenant based on Westfield's delay of the Conditional Approval process is also dismissed.

### IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion for a default judgment so deemed by the Court as filed by plaintiff Starbucks Corporation (Dkt. No. 30) is **DENIED;** and further

**ORDERED** that the motion to dismiss so deemed by the Court as filed by defendant New WTC Retail Owner LLC ("Westfield") (Dkt. No. 16) is **DENIED** in part and **GRANTED** in part. In particular, the motion is denied as to Counts One and Two. The claim for the breach of the covenant of good faith and

---

look only to the allegations on the face of the complaint." <u>Roth</u>, 489 F.3d at 509.

[5]   Such allegations could allow the Court to draw a reasonable inference, at the motion to dismiss stage, that Westfield did breach its obligation of good faith and fair dealing by delaying the Conditional Approval process.

fair dealing based on an alleged failure to provide a Delivery Date, alleged in Count Three, is dismissed with prejudice as duplicative of Counts One and Two. The claim for the breach of the covenant of good faith and fair dealing based on an alleged delay of the Conditional Approval process, also alleged in Count Three, is dismissed without prejudice; and further

**ORDERED** that defendant Westfield shall file and serve a copy of its answer to Starbucks's Complaint within fifteen (15) days of the date of this Order.

**SO ORDERED.**

Dated:     October 18, 2021
           New York, New York

_____
                Victor Marrero
                  U.S.D.J.